UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.B., et al., | Case No. 16-cv-04382-DMR |
| Plaintiffs, | |
| v. | **ORDER ON MOTIONS TO SUPPLEMENT THE RECORD** |
| WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT, et al., | Re: Dkt. Nos. 53, 54 |
| Defendants. | |

Plaintiffs L.B. and M.B. are the parents of S.B., a former student. They appeal the May 15, 2016 administrative decision of the California Office of Administrative Hearings pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Plaintiffs and Defendants West Contra Costa Unified School District and West Contra Costa Unified School District Special Education Local Plan Area separately move to introduce additional evidence to supplement the administrative record. [Docket Nos. 53 (Defs.' Mot.), 54 (Pls.' Mot.).] The motions are suitable for resolution without a hearing pursuant to Civil Local 7-1(b). For the following reasons, Defendants' motion is granted and Plaintiffs' motion is denied.

## I. BACKGROUND

Plaintiffs make the following allegations in their complaint. S.B., who was born in 1994, has multiple learning disabilities. She became eligible for special education and related services starting in eighth grade, and graduated from high school in June 2015. At all relevant times, S.B.'s school district of residence was West Contra Costa Unified School District (the "District"). [Docket No. 45 (First Am. Compl., "FAC") ¶¶ 12, 13.]

On July 25, 2013, S.B. filed a due process complaint with the Office of Administrative Hearings ("OAH") alleging that the District had failed to provide her with a free and appropriate

public education ("FAPE") for the 2011-2012 and 2012-2013 school years. FAC ¶ 25. In August 2013, while the due process proceeding was pending, S.B. began attending Bayhill High School in Oakland, California. *Id*. at ¶¶ 27, 29. S.B. and her parents settled their due process complaint with the District on November 17, 2013. As part of the settlement, the District finalized S.B.'s placement at Bayhill High School with specialized services. The parties also agreed that the District would provide S.B. with "transportation to/from Bayhill in the form of reimbursement for one round-trip per day of attendance at the current IRS rate." *Id*. at ¶ 31. Plaintiffs allege that the agreement provided that "[m]ileage reimbursement shall be provided within 30 days of the District's receipt of properly completed mileage reimbursement form(s)," and that "[m]ileage reimbursement must be submitted by [S.B.] on a monthly basis." *Id*.

Plaintiffs allege that after the settlement agreement was finalized, the District never provided S.B. or M.B. with mileage reimbursement forms to complete. *Id*. at ¶¶ 32, 39. In April 2014, M.B. submitted a request for several months' worth of mileage reimbursement to the District on forms created by her attorney, but never received reimbursement for the mileage claimed on these forms. *Id*. at ¶¶ 39, 40. In June 2015, M.B. submitted mileage reimbursement forms for the period August 27, 2013 through June 5, 2015. Plaintiffs allege that the District never processed the forms. *Id*. at ¶ 43. S.B. graduated from Bayhill High School on June 7, 2015. *Id*. at ¶ 12.

According to Plaintiffs, at S.B.'s March 5, 2014 individualized education program ("IEP") meeting, her attorney requested that the District provide independent educational evaluations ("IEEs") in the areas of psychoeducation, speech and language, and occupational therapy. *Id*. at ¶ 37. Plaintiffs allege that although the District advised that it would respond to the request "at a later time," they never received a letter from the District regarding their request for the IEEs. *Id*. at ¶¶ 37, 41. Additionally, Plaintiffs allege that at the March 5, 2014 IEP meeting, S.B.'s attorney requested District-provided transportation for S.B. because it was burdensome for M.B. to make two round trips per day to transport S.B. to and from school. According to Plaintiffs, the District responded that "it would only provide reimbursement pursuant to the settlement agreement." *Id*. at ¶ 38.

Plaintiffs filed a due process complaint against the District on August 26, 2015, alleging that the District had failed to provide S.B. with a FAPE for the 2013-2014 and 2014-2015 school years by failing to reimburse S.B. and/or her parents for round trip mileage to and from Bayhill High School. *Id*. at ¶ 44. At a September 8, 2015 resolution session, the District informed S.B.'s attorney that it could not accept the mileage reimbursement request previously submitted by M.B. because the request was not submitted on District forms. S.B.'s attorney and her sister then completed the District's mileage reimbursement forms for the period August 27, 2013 to June 5, 2015. *Id*. at ¶ 45. Plaintiffs allege that their attorney "was told M.B.'s signature was not required [on the forms] because her signature was on the other forms." *Id*. Plaintiffs further allege that on or around October 8, 2015, their attorney "was told by District Counsel that M.B. needed to come in and sign the mileage forms before they could be processed," even though "the attorney had inquired on September 8[, 2015]." *Id*. at ¶ 46. M.B. signed the forms on October 9, 2015 and was told she would receive the check within 30 days. *Id*.

S.B. amended her due process complaint in October 2015, challenging the District's failure to 1) reimburse S.B. and/or her parents for round trip mileage to and from Bayhill High School through March 5, 2014; 2) provide transportation to and from school for S.B. after Plaintiffs' March 5, 2014 request; and 3) provide the three IEEs following Plaintiffs' counsel's March 5, 2014 request. *Id*. at ¶ 48. The matter was tried on March 22-24, 2016. *Id*. at ¶ 56. Plaintiffs allege that at a March 11, 2016 prehearing conference, counsel for the District informed Plaintiffs' counsel for the first time that the District had notified M.B. that it had granted the request for the IEEs in a letter dated March 27, 2014. Counsel further stated that the District had already mailed M.B. and L.B. a check for the mileage reimbursement. *Id*. at ¶ 53. Plaintiffs never received a check in the mail. *Id*. at ¶ 54. On March 23, 2016, the second day of trial, the District provided M.B. with a check for mileage reimbursement from August 27, 2013 to June 5, 2016. *Id*. at ¶ 62.

The Administrative Law Judge ("ALJ") issued a decision in May 2016. FAC Ex. 1 (OAH Decision). In relevant part, the ALJ found that 1) OAH lacked jurisdiction over the issue of whether the District denied S.B. a FAPE by failing to reimburse Plaintiffs for mileage for one round trip per day from August 28, 2013 through March 5, 2014, since the reimbursement was

required by a settlement agreement and OAH lacks jurisdiction to enforce settlement agreements; 2) even if OAH had jurisdiction over the August 2013-March 2014 mileage reimbursement dispute, the issue was moot because S.B. received full reimbursement on March 23, 2016; and 3) S.B. did not establish that she was denied a FAPE based on the District's failure to provide IEEs, since S.B. had failed to pursue the IEEs after the District granted her request. *Id*.

Plaintiffs bring three claims for relief. The first asserts that the District violated the IDEA, 20 U.S.C. § 1415(c)(2)(B)(i)(I), by failing to respond to L.B. and M.B.'s due process complaint within 10 days, which "resulted in unnecessary and protracted litigation considering that the District paid the mileage reimbursement during the second day of [the] hearing." *Id*. at ¶¶ 87-89. The second claim for relief challenges the ALJ's finding that Plaintiffs were entitled to reimbursement for two round-trips per day instead of the actual costs of transportation for transporting S.B. to and from Bayhill High School.[1] *Id*. at ¶ 91. The third claim for relief asserts that the ALJ erred in finding that the District did not deny S.B. a FAPE based on its failure to provide IEEs. *Id*. at ¶¶ 97-113.

The parties now move separately to supplement the administrative record. The District asks to supplement the record with a declaration by its counsel, Shawn Olson Brown, to which three exhibits are attached. [Docket No. 51-1 (Olson Brown Decl., Jan. 27, 2017).] According to the District, the Olson Brown declaration contains evidence that contradicts certain allegations in the FAC.

Plaintiffs move to supplement the record with an "expert declaration" by transportation provider Brenda Saunders, which they submitted with their reply. [Docket No. 57-1 (Saunders Decl., Oct. 5, 2017).]

## II. LEGAL STANDARD

Congress enacted the IDEA "to assist state and local agencies financially in educating students with disabilities." *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 642 (9th Cir. 2005).

---

[1] The ALJ found that Plaintiffs were entitled to two round trips per day, but awarded them reimbursement for only one round trip per day because Plaintiffs had already been reimbursed for one round trip per day for that specific time period.

4

Congress stated the goal of the IDEA as follows:
> to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]

20 U.S.C. § 1400(d)(1)(A). To that end, the IDEA contains numerous procedural safeguards, including parental notification requirements and complaint procedures "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. §§ 1415(b)(3), 1415(b)(6)(A). After filing a complaint, a child's parents are entitled to "an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A). Any party may appeal the result in a civil action in state or federal court. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993) (citation omitted).

In a civil action seeking review of an administrative decision, the IDEA provides that a court "shall receive the records of the administrative proceedings; . . . shall hear additional evidence at the request of a party; and . . . basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "Thus, judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai*, 4 F.3d at 1471. However, complete de novo review is inappropriate. "Because Congress intended states to have the primary responsibility of formulating each individual child's education, [courts] must defer to their 'specialized knowledge and experience' by giving 'due weight' to the decisions of the states' administrative bodies." *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1126 (9th Cir. 2003), *superseded by statute in non-relevant part*, *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634 (9th Cir. 2005). "How *much* deference to give state educational agencies, however, is a matter for the discretion of the courts[.]" *Ojai*, 4 F.3d at 1472 (emphasis in original) (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)).

As noted, the IDEA provides that a court reviewing an administrative decision may consider "additional evidence." However, "not all evidence is 'additional evidence.'" *E.M. v. Pajaro Valley Unified Sch. Dist.*, 652 F.3d 999, 1004 (9th Cir. 2011). For example, "a district

court need not consider evidence that simply repeats or embellishes evidence taken at the administrative hearing, nor should it admit evidence that changes 'the character of the hearing from one of review to a trial de novo.'" *Id.* (quoting *Ojai*, 4 F.3d at 1473); *see also Ojai*, 4 F.3d at 1472-73 ("[w]e construe 'additional' in the ordinary sense of the word to mean supplemental." (citation and quotation omitted)). "[E]vidence that is non-cumulative, relevant, and otherwise admissible constitutes 'additional evidence' that the district court 'shall' consider pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii)." *E.M.*, 652 F.3d at 1004.

## III. DISCUSSION

### A. The District's Motion

The District seeks to supplement the record with the Olson Brown Declaration, to which three partially redacted email exhibits are attached.[2] The District asserts that in the declaration and supporting documentation, Olson Brown provides evidence directly refuting three allegations in the FAC related to Plaintiffs' first claim for relief, which is that the District's failure to respond to L.B. and M.B.'s due process complaint within 10 days unreasonably and unnecessarily protracted litigation with respect to the issue of transportation reimbursement. With respect to this claim, Plaintiffs first allege that the District and/or its counsel failed to communicate with Plaintiffs about how they could request mileage reimbursement and never provided them with mileage forms to complete. *See* FAC ¶¶ 32, 39, 40, 43. In her declaration, Olson Brown states that she contacted Plaintiffs' counsel on November 17, 2013 and informed her that Plaintiffs "should turn in District mileage reimbursement forms each month," and that they "[could] get the forms from the special education office." Olson Brown Decl. ¶ 2, Ex. A.

Plaintiffs next allege that after they learned that they needed to request mileage reimbursement on the District's forms, the District told their attorney on September 8, 2015 that M.B.'s signature was not required on the forms in order for them to be processed. According to Plaintiffs, the District reversed course one month later and informed counsel that M.B.'s signature

---

[2] Olson Brown states that the three emails are "redacted to preserve privilege." Olson Brown Decl. ¶¶ 2-4.

6

was in fact required before it could process the forms. FAC ¶¶ 45, 46. Olson Brown disputes this. She states that Plaintiffs' counsel and S.B.'s sister "were informed that M.B. . . . would need to sign the mileage reimbursement forms" at the parties' September 8, 2015 Resolution Session, and that on September 30, 2015, Plaintiffs' counsel emailed Olson Brown and confirmed her understanding "that [M.B.] needs to come sign [the forms]."[3] Olson Brown Decl. ¶ 3, Ex. B.

Finally, Plaintiffs allege that although the District included a copy of the mileage reimbursement check in the hearing exhibit binder on March 15, 2016, it "made no effort to give the check to M.B. or S.B. prior to the hearing in order to avoid proceeding to trial on that issue." FAC ¶ 55. However, Olson Brown states that District witnesses testified at the hearing that the mileage reimbursement check had been returned as undeliverable and that they had "called Plaintiffs multiple times that the check was ready." Olson Brown Decl. ¶ 4. She also states that on March 16, 2016, several days before the hearing started on March 22, 2016, she informed Plaintiffs' counsel by email that the District had mailed the check on December 16, 2015 and that it had been returned as undeliverable; that a District employee had left several messages in Spanish for M.B. that the check "was ready for pick up at the downtown District Office"; and that as the check was "still there . . . [M.B.] can pick it up, in person, anytime." *Id*. at Ex. C.

The District argues that the Olson Brown declaration and exhibits are evidence that is non-cumulative and "relevant to this Court's understanding of the underlying due process matter." Defs.' Mot. 2.

Plaintiffs oppose the motion. Their opposition does not address Olson Brown's statements in her declaration; rather, it focuses solely on the emails attached to the declaration. Plaintiffs do not argue that the emails fail to satisfy the "additional evidence" standard from *E.M.*, but instead assert that the emails are incomplete excerpts and thus lack context. To that end, Plaintiffs submit copies of what they claim are the full emails.[4] They also dispute the District's assertions about

---

[3] In her declaration, Olson Brown states that the date of the Resolution Session was September 8, 2014, and that Plaintiffs' counsel's email was dated September 30, 2014. Brown Olson Decl. ¶ 3. These dates appear to be typos, as the email attached to the declaration is dated September 30, 2015, not 2014. *See id*. at Ex. B.

[4] Plaintiffs did not submit a declaration authenticating the emails.

7

what the emails establish with respect to the parties' actions, and contend that the emails do not actually contradict the allegations in the FAC. For example, with respect to Olson Brown's emailed statement that Plaintiffs could get the mileage reimbursement forms "from the special education office," Plaintiffs argue that "[t]his email DOES NOT prove that District provided Plaintiffs with copies of the District mileage logs." Pls.' Opp'n 3. Plaintiffs also assert that the full email thread which she provides as Exhibit A shows that the communications were for the purpose of "finaliz[ing] the settlement terms." According to Plaintiffs, "[t]here would be no reason for Plaintiffs['] attorney to remember the details of the mileage forms while she was focused on finalizing settlement terms." *Id*. They also argue that March 16, 2016 email does not disprove their allegations, because it was the District's "first email communication about the check," even though the check had been at the District's office since December 2015.[5] *Id*.

Here, the District seeks to supplement the record with evidence that is relevant to Plaintiffs' claim that the District unnecessarily protracted the litigation with respect to the issue of transportation reimbursement. Reasons for supplementing the record in IDEA proceedings may include "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Ojai*, 4 F.3d at 1473 (emphasis added) (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984)). Although Olson Brown was not "unavailable" to testify or offer the emails at the hearing before the ALJ, the District had no reason to present such evidence at that time, because it was not relevant to those proceedings. The due process complaint that the parties tried before the ALJ in March 2016 covered only the District's alleged failure to 1) reimburse Plaintiffs for round trip mileage; 2) provide S.B. with transportation to and from school for a certain period of time; and 3) provide IEEs. *See* FAC ¶ 48. Plaintiffs did not claim that the District had unnecessarily prolonged the parties' litigation with respect to the issue of transportation reimbursement until

---

[5] Plaintiffs do not challenge or discuss Olson Brown's statement that District witnesses testified that they mailed Plaintiffs the reimbursement check but it was returned as undeliverable and that the District called Plaintiffs "multiple times that the check was ready." Olson Brown Decl. ¶ 4.

8

they filed this litigation challenging the ALJ's decision.

Plaintiffs' arguments about the meaning and import of the proffered evidence do not address the question of whether the evidence should be added to the record; Plaintiffs' arguments go to the merits. Such arguments do not establish that the evidence is cumulative, irrelevant, or otherwise inadmissible. *See E.M.*, 652 F.3d at 1004. The District's motion to supplement the record is therefore granted.

Additionally, Plaintiffs assert that the emails attached to Olson Brown's declaration are incomplete. They argue that if the court grants the District's motion, it should order the District to introduce the entire email chains into evidence. Plaintiffs submit what they claim are the complete email chains, but do not authenticate the documents in any way. The District is silent on this issue. The court has reviewed the documents attached to Plaintiffs' opposition. Assuming that the documents are what Plaintiffs represent them to be, the court grants Plaintiffs' request, as the full email chains provide some additional context to the communications between the District and Plaintiffs' counsel.

Plaintiffs also argue that the District has disclosed Plaintiffs' identities by not redacting their names from the emails attached to Olson Brown's declaration. However, Plaintiffs have not moved for permission to proceed pseudonymously, even though the FAC includes a footnote that they intend to seek leave to do so. *See* FAC ¶ 9 n.1. Since the court has never granted Plaintiffs leave to proceed using pseudonyms, it declines to redact the emails.

### B. Plaintiffs' Motion

Plaintiffs move to supplement the record to include a declaration by their expert, transportation provider Brenda Saunders (formerly Mason). Plaintiffs claim that the evidence is relevant to their second claim for relief, which challenges the ALJ's finding that Plaintiffs were entitled to reimbursement for two round-trips per day. *See* FAC ¶ 91.

Plaintiffs allege in the FAC that they had planned on offering Saunders's testimony at the hearing before the ALJ, but that she "was not available until the afternoon of . . . March 25, 2016," and "[t]he parties would have been required to wait a few hours for Ms. [Saunders] to arrive." FAC ¶ 83. So that the parties could "conclude the trial," Plaintiffs' attorney obtained permission

9

from the ALJ "to submit quotes from three transportation providers in order to establish the cost the District would have paid to transport S.B. to and from Bayhill." *Id*. Plaintiffs submitted quotes from Yellow Cab Express, Yellow Cab USA, and Taxi Fare Finder. They quoted costs of $110 round trip (Yellow Cab Express); $70 one way or $140 round trip (Yellow Cab USA); and $76.59 one way or $153.18 round trip (Taxi Fare Finder) to transport S.B. *Id*. at ¶ 84. According to Plaintiffs, Steve Collins, the "person most knowledgeable for the District in regards to transportation, did not know the mileage rates to transport [S.B.] to and from Bayhill High School," and that he "purposely withheld this information to prevent OAH from appropriately compensating Plaintiffs." *Id*. at ¶ 95.

Plaintiffs now seek to offer Saunders's declaration as evidence of "the actual cost of the transportation that the District would have paid if they had actually provided the transportation" to S.B. Pl.'s Mot. 1. In her declaration, Saunders states that she is the owner and operator of A Car 4 Kids and Adults, LLC. Her company has contracted with West Contra Costa School District and other institutions, school districts, and parents to provide transportation for children and adults in the Bay Area. Saunders Decl. ¶ 3. Saunders states that she has reviewed the quotes provided by Yellow Cab Express, Yellow Cab USA, and Transportation Taxi-Fare Finder, and that she would have quoted the District $80 per day to transport S.B. for the 2013-14 school year, $95 per day for the 2014-15 school year, and $76 per day for the 2015-26 school year.[6] *Id*. at ¶¶ 7, 8. She explains that these quotes are based upon a number of factors, including the times of day of travel, traffic, and gas prices. *Id*. at ¶ 7. Saunders states that she was initially scheduled to testify at the hearing on or around March 24, 2016, and confirms that she was not available to testify at the hearing on March 25, 2016 until the afternoon. *Id*. at ¶ 4.

Plaintiffs argue that the Saunders declaration is relevant to their claim that the ALJ should have awarded them the actual costs of transportation instead of mileage reimbursement. They argue that her declaration is evidence "from a witness that was unavailable at trial that is [n]on-

---

[6] Elsewhere in her declaration, Saunders states that a "$70 rate would have been appropriate for the 2013-2[0]14 school year." Saunders Decl. ¶ 8. It is not clear whether Saunders is stating that she would have quoted the District $80 per day but actually only charged them $70, or if she is discussing Yellow Cab USA's quote of $70 per one way.

10

[c]umulative and [r]elevant." Pls.' Mot. 4.

The District opposes the motion on the ground that Saunders was not actually "unavailable" to testify, and that Plaintiffs' counsel instead made a strategic decision not to call her as a witness. The District submits excerpts from the hearing transcript in which Plaintiffs' counsel responds to the ALJ's questions about her "proposed plan [for] witnesses" on the following day by stating "I actually got quotes from the taxicab company . . . *in lieu of testimony* so that we can be done faster." Counsel further states that "if those [quotes] are not acceptable, then [she] can call Brenda [Saunders]." [Docket No. 54-1 (Mishook Decl., Oct. 19, 2017) ¶ 2, Ex. A at ECF p. 10-11 (emphasis added).] On what appears to be the following day, Plaintiffs' counsel stated on the record that Saunders "is available to testify today . . . in mid-afternoon," and that if the ALJ admitted the quotes from the taxicab company, the quotes "would be in lieu of [Saunders's] testimony." Mishook Decl. Ex. A at ECF p. 13. The District also argues that Saunders's declaration is cumulative because the record already includes three separate quotes for transportation services introduced by Plaintiffs.

Plaintiffs' motion to supplement the record with Saunders's declaration is denied. As noted, the Ninth Circuit has held that reasons for supplementing the record include the "unavailability of a witness" or "an improper exclusion of evidence by the administrative agency." *See Ojai*, 4 F.3d at 1473 (quoting *Town of Burlington*, 736 F.2d at 790). Contrary to Plaintiffs' assertion, Saunders was not unavailable to testify at the hearing. Nor did the ALJ exclude her testimony. Rather, as Plaintiffs concede in their reply, "Plaintiff[s'] attorney made the decision that in lieu of her testimony, Plaintiff[s'] attorney submitted the transportation quotes instead." Pls.' Reply 2. It appears to be undisputed that Plaintiffs had the opportunity to call Saunders as a witness, but chose not to in favor of relying on transportation quotes. By making that strategic choice, Plaintiffs deprived the District of the opportunity to cross-examine Saunders. Permitting Plaintiffs to introduce the Saunders declaration as additional evidence under these circumstances would be fundamentally unfair.

Additionally, Saunders's declaration is confusing, and would not assist the court without further clarification. According to Plaintiffs, if the court accepted Saunders's "rate of $80 each

11

way or the lowest transportation quote of $55 each way, the District would have paid between $110-$170 per day for the 2013-14 school year." Reply 3. However, it is not clear from her declaration that Saunders contends that a rate of "$80 each way" for the 2013-14 school year would be appropriate, as she states the following:

> If I had contracted with West Contra Costa Unified School District, I would have quoted them $80 per day for the 2013-14 school year . . .

Saunders Decl. ¶ 7. While it appears that she is referring to a rate for one-way travel, she does not clearly state whether the $80 per day covers one way or round trip transportation.

In sum, the court declines to exercise its discretion to permit Plaintiffs to supplement the record with a declaration from a witness they chose not to call in the administrative hearing. Plaintiffs' motion to supplement the record is denied.

## IV. CONCLUSION

For the foregoing reasons, the District's motion to supplement the record is granted. Plaintiffs' motion to supplement the record is denied.

**IT IS SO ORDERED.**

Dated: November 17, 2017



Donna M. Ryu
United States Magistrate Judge

12