UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

L.B., et al.,

        Plaintiffs,

    v.

WEST CONTRA COSTA UNIFIED
SCHOOL DISTRICT, et al.,

        Defendants.

Case No. 16-cv-04382-DMR

**ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 64, 65

Plaintiffs L.B. and M.B. and their child, S.B., a former student, filed this lawsuit to appeal portions of the May 15, 2016 administrative decision of the California Office of Administrative Hearings pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Plaintiffs and Defendants West Contra Costa Unified School District and West Contra Costa Unified School District Special Education Local Plan Area now separately move for summary judgment.

The parties' original briefs in support of their motions for summary judgment did not consistently cite to evidence in the administrative record. Accordingly, the court ordered the parties to file amended briefs providing complete, accurate pinpoint citations to evidence in the administrative record in support of their contentions. [Docket No. 75.] Defendants timely filed their amended brief. [Docket No. 76 (Defs.' Mot.).] Plaintiffs filed their amended brief one court day after the deadline, without explanation. [Docket No. 77 (Pls.' Mot.).]

This matter is appropriate for resolution without a hearing. Civ. L.R. 7-1(b). Having considered the parties' motions and the administrative record, the court grants Defendants' motion and denies Plaintiffs' motion.

# I.    BACKGROUND

## A.  Factual Background

The court takes the following factual and procedural background from the relevant findings of fact made by Administrative Law Judge ("ALJ") Lisa Lunsford in the underlying administrative proceeding and the corresponding Administrative Record ("A.R."), which was filed under seal. [Docket Nos. 45-1 (Office of Administrative Hearings ("OAH") Decision), 72 (A.R.).]

S.B. was 21 years old and a former West Contra Costa County Unified School District ("the District") student at the time of the administrative hearing in this matter.  OAH Decision 3, ¶ 1.  She is bilingual and speaks both Spanish and English.  *Id*.  While she was a student, S.B. was eligible for special education and related services due to a learning disability and speech and language impairment.  *Id*. at 3, ¶ 2.  She resided with her family in San Pablo, California.  *See* A.R. 3 (listing Plaintiffs' contact information).

On November 18, 2013, the parties executed a settlement agreement resolving earlier claims S.B. brought against the District.  Pursuant to the settlement agreement, the District agreed to place S.B. at Bayhill High School ("Bayhill"), a certified nonpublic school in Oakland, California; provide speech and language therapy, mental health counseling, and assessments; and reimburse the family for transporting S.B. to and from Bayhill.  Specifically, the District agreed to reimburse the family at the current IRS rate of reimbursement for one round trip per day of S.B.'s attendance at Bayhill.  OAH Decision 3, ¶ 3; A.R. 152-57.  The agreement provided that "[m]ileage reimbursement shall be provided within 30 days of the District's receipt of properly completed mileage reimbursement form(s)," and that "[m]ileage reimbursement claims must be submitted by Student on a monthly basis."  OAH Decision 3, ¶ 3; A.R. 153.  Counsel for the District had previously notified the family's counsel by email that they could get the mileage reimbursement forms "from the special education office" and that the forms would be processed on a monthly basis within 30 days.  [Docket No. 53-1 at ECF p. 1 (Nov. 17, 2013 email from S. Olson Brown to L. Porter).]

S.B. began attending Bayhill on August 26, 2013.  OAH Decision 3, ¶ 2.  The parties held an Individualized Education Program ("IEP") meeting on March 5, 2014 at which they agreed to

2

continue S.B.'s placement at Bayhill for the 2014-2015 school year. *Id.* at 4, ¶ 8; A.R. 206-13. S.B. graduated from Bayhill in June 2015. *Id.* at 3, ¶ 2.

### 1. Transportation and Mileage Reimbursement

At the March 5, 2014 IEP meeting, the family's counsel asked the District to provide transportation for S.B. to and from Bayhill, as having S.B.'s family transport her to and from school was causing an economic hardship. OAH Decision 5, ¶ 10. Counsel "explicitly requested that transportation be considered by the team as part of [S.B.']s ongoing needs with regarding to receiving a [free and appropriate public education, "FAPE"] and provided as part of [S.B.']s IEP." *Id.* at ¶ 11. The District denied the request, and instead offered to continue providing mileage reimbursement for one round trip per day. *Id.* at ¶ 10.

S.B.'s mother, M.B., and sister drove S.B. to and from Bayhill during the 2013-2014 and 2014-2015 school years. *Id.* at 6 ¶ 14. S.B. did not have a driver's license and could not drive herself. Her mother and sister often drove together so that they could take the carpool lane during periods of heavy traffic. They made one round trip in the morning to take S.B. to school and a second round trip in the afternoon to pick her up. The distance for each round trip between S.B.'s home and Bayhill was 34.21 miles, for a total of 68.42 miles for each day S.B. attended school. *Id.*

The ALJ found that the family did not submit "properly completed mileage reimbursement forms" on a monthly basis, as required by the settlement agreement. *Id.* at 6, ¶ 15. Instead, it submitted a request for reimbursement for both school years in summer 2015, using forms created by S.B.'s counsel.[1] The District did not process the request because it was not on its mileage reimbursement forms. *Id.*

### 2. Independent Educational Evaluations

Counsel also requested three independent educational evaluations ("IEEs") for S.B. at the

---

[1] The ALJ noted "conflicting testimony" about whether the family first submitted a request for reimbursement to the District in April 2014 or summer 2015. *See* OAH Decision 6 n.3; *see also* Am. Compl. ¶ 39 ("In April of 2014, M.B. submitted mileage reimbursement forms created by her attorney to the District for the period August 27, 2013-April 30, 2014."). The ALJ ultimately concluded that it was not necessary to resolve the conflict, finding that "the fact that payment has been received renders this conflict moot." OAH Decision 6 n.3.

March 5, 2014 meeting.  OAH Decision 4, ¶ 9; A.R. 212.  The ALJ found that on March 27, 2014, the District mailed a letter to S.B. and her parents communicating its approval of the request for IEEs.  OAH Decision 5, ¶ 12, 7 ¶ 21; A.R. 435-42 (Mar. 27, 2014 Letter); *see also* A.R. 850-851, 903 (testimony regarding letter approving request for IEEs).  Special Education Local Plan Area ("SELPA") Director Steve Collins signed the letter, which was written in English.  Collins wrote:

> Your request for an Independent Education Evaluation at public expense has been approved.
>
> Please review the attached "Independent Educational Evaluations" policy.  Please confirm with the district the individual you have selected.
>
> Upon completion of the evaluation, an IEP meeting will be held to review the results of the assessment.

He also enclosed a copy of the District's Independent Educational Evaluations policy.  A.R. 436-42 (Ex. D13).  The ALJ found that the family never responded or contacted the District to follow up on the request for IEEs at any time prior to S.B.'s June 2015 graduation from Bayhill.  OAH Decision 5, ¶ 12, 8, ¶ 24; A.R. 851.

At the administrative hearing, S.B.'s sister testified that she could not remember if she had seen the March 27, 2014 letter granting the request for IEEs and that it did not "look familiar."  A.R. 1080; OAH Decision 7, ¶ 22.  The ALJ concluded that the testimony of S.B.'s sister was not credible, and that the testimony of District witnesses regarding the drafting and mailing of the letter "was consistent and supported by documentation and thus given more weight."  OAH Decision 7, ¶¶ 21, 22.  The ALJ found that "[t]he evidence supports the conclusion that the letter from [the District] granting the request for independent evaluations was correctly addressed and properly mailed" to S.B. and her parents.  *Id*. at 8, ¶ 22.

### 3.  Administrative Proceedings

As noted, S.B. graduated from Bayhill in June 2015.  OAH Decision 3, ¶ 2.  On August 27, 2015, the family filed a request for a due process hearing with OAH.  A.R. 2-7.  The family alleged that the District had never provided it with mileage reimbursement forms and had never reimbursed S.B.'s parents for mileage for the 2013-2014 or 2014-2015 school years.  As a result, the family alleged, the District failed to provide S.B. with a FAPE for those two school years.  *Id*.

In the request, the family stated that S.B. and her parents "are monolingual speakers whose primary language is Spanish. They will require a Spanish translator for all proceedings, including, but not limited to: Early Resolution Session, Mediation and the Due Process hearing." A.R. 4.

The District held a resolution session on September 8, 2015 which S.B.'s sister and attorney attended. OAH Decision 6, ¶ 16. At the resolution session, S.B.'s sister filled out the District's mileage reimbursement request forms covering August 27, 2013 through June 3, 2015. *Id*.; A.R. 467-92. On September 30, 2015, the District's counsel notified the family's lawyer by email that the District had "processed the mileage forms" but that S.B.'s mother needed to sign the forms. She stated, "Once they're signed and the due process complaint is taken care of, the District will release the checks." In response, counsel asked, "I don't understand what you're saying about the checks. I understand that [M.B.] needs to come sign, but what are you saying about the checks?" [Docket Nos. 51-1 at ECF p. 8; 53-1 at ECF p. 3 (Sept. 30, 2015 emails between S. Olson Brown and L. Porter).] The record does not contain a response to counsel's question. Other than the email from the District's counsel regarding the forms, the record contains no written response by the District to the August 27, 2015 due process request. M.B. signed the forms on October 9, 2015. OAH Decision 6, ¶ 16.

The due process hearing was scheduled for October 21, 2015. *See* A.R. 28. The family's lawyer submitted a Prehearing Conference Statement on October 12, 2015 in which she represented that the parties were discussing settlement and an ALJ held a prehearing conference with the parties on the same date. A.R. 23-27. The ALJ granted the family's request for a continuance of the hearing to October 27 and 28, 2015, which the District opposed. A.R. 28-33.

The family subsequently moved for leave to file an amended complaint. A.R. 40-45. In the motion, the family asserted that while preparing the evidence binder for the October 2015 hearing, its attorney "discovered the issue of the IEE that had never been resolved" and that S.B.'s parents "believe that these IEEs will help Student to receive accommodations as she attends junior college, which was part of her transition plan." A.R. 43. The family requested leave to amend the due process complaint to add claims, including a claim regarding the District's failure to provide IEEs. *Id*. The District did not oppose the request to amend and an ALJ granted the motion on

The family's October 23, 2015 amended due process request addressed two issues: mileage reimbursement and their previous request for IEEs.  A.R. 143-48.  The family again alleged that the District had never reimbursed S.B.'s parents for mileage for the 2013-2014 or 2014-2015 school years.  It alleged that the District had failed to provide a FAPE for the 2013-2014 school year by failing to provide mileage reimbursement for round trip mileage to and from Bayhill; failing to provide transportation following the 2014 request; and failing to provide the IEEs following the 2014 request.  It also alleged that the District had failed to provide a FAPE for the 2014-2015 school year by failing to provide transportation or reimbursing Plaintiffs "for two round trips mileage to and from" Bayhill.  A.R. 147-48.  While conceding that the family had agreed to mileage reimbursement for the 2013-2014 school year, the family asserted that it did not agree to mileage reimbursement for the 2014-2015 school year and requested, "either [reimbursement for mileage for] two round trips for the 2014-15 school year or reimbursement at the rate that the District pays its transportation company for two rounds [sic] trips between San Pablo and Oakland."  A.R. 147.

> As to the request for IEEs, the family alleged the following:
>> [A]t the March 5, 2014 IEP, Student's attorney also request[ed] an IEE in psycho-education, speech and language and occupational therapy.  This request was documented in the IEP notes.  The District NEVER filed for Due Process to get a finding that their assessments were appropriate.  Now that Student is attempting to enter college, in order to obtain accommodations, she needs an accurate report documenting all of her disabilities.  Since the reports conducted by the District are inaccurate and also extremely incomplete, Student is unable to obtain the appropriate accommodations.

A.R. 146.

The family proposed the following resolutions: 1) reimbursement "for one round trip mileage to/from Bayhill . . . through May 5, 2014"; 2) reimbursement "for two round trip mileage to/from Bayhill . . . from May 5, 2014 through the 2014-2015 school year"; 3) District funding for the three IEEs; and 4) attorneys' fees.  A.R. 148.  It again requested a Spanish translator for all proceedings.  A.R. 145.

The record contains no evidence of a written response by the District to the October 23,

2015 due process request.

The hearing on the amended due process request was set for December 17, 2015. A.R. 59-64. The District filed a prehearing conference statement on December 2, 2015 listing documentary evidence it planned to present at the hearing, among other things. A.R. 70-74. The District did not list the March 27, 2014 letter in which the District notified the family of the approval of the request for IEEs. *See* A.R. 72.

On December 15, 2015, the District issued a check payable to M.B. in the amount of $7,435.53, representing full reimbursement for one round trip per day for attendance at Bayhill from August 27, 2013 through June 3, 2015. OAH Decision 6, ¶ 18; A.R. 493-94. The check was mailed to the family on December 16, 2015. OAH Decision 7, ¶ 18; *see* A.R. 496-98. A District representative, Rosa Moreno, left the family a voicemail in Spanish "that the check was on its way." OAH Decision 7, ¶ 18. However, the check was returned to the District as undeliverable. A.R. 495. In January 2016, Moreno left the family another voicemail in Spanish, notifying them that she needed to speak with them about the check. OAH Decision 7, ¶ 19; A.R. 346-47. The ALJ found that the family did not follow up with Moreno or the District regarding the check. *Id.* at 7, ¶ 20.

At the parties' request, the hearing was continued to January 26 and 27, 2016. A.R. 85-87. The District filed an amended prehearing conference statement on January 5, 2016. A.R. 88-93. The District again did not list the March 27, 2014 letter in which the District notified the family of the approval of the request for IEEs. *See* A.R. 90-91.

On January 8, 2016, the hearing was continued again at the family's request to March 22-24, 2016. A.R. 99-101. An ALJ held a prehearing conference on March 11, 2016. A.R. 102-07. The family's counsel asserts that this was the first time she learned of the March 27, 2014 letter from Steve Collins notifying the family that the District had approved the request for IEEs. *See* A.R. 606, 617. On March 16, 2016, the District's counsel emailed the family's lawyer, informing her that the mileage reimbursement check had been mailed to the family on December 16, 2015, had been returned as undeliverable, and was ready to be picked up at the "downtown District Office." [Docket No. 51-1 at ECF p. 10 (Mar. 16, 2016 email from S. Olson Brown to L. Porter).]

United States District Court
Northern District of California

ALJ Lunsford conducted the due process hearing on March 22-25, 2016. OAH Decision 1. The District hand-delivered the mileage reimbursement check to M.B. on March 23, 2016, the second day of the hearing. OAH Decision 7, ¶ 20.

### B. The OAH Decision

The ALJ issued a decision on May 5, 2016. In relevant part, the ALJ found that the District had denied S.B. a FAPE from March 5, 2014 through the end of the 2013-2014 school year when it failed to provide S.B. transportation to and from school upon her request. OAH Decision 15, ¶¶ 24-26. The ALJ concluded that the District's offer to reimburse the family for mileage for one round trip per day "was insufficient to adequately compensate [S.B.]'s family." *Id*. at 16, ¶ 27. The ALJ also found that the District had denied S.B. a FAPE from March 5, 2014 through the end of the 2014-2015 school year by failing to provide S.B. compensation and offering to reimburse the family for mileage "for only one round trip per day, instead of two." *Id*. at 16, ¶¶ 28-30.

The ALJ noted that S.B. had requested the remedy of either "mileage reimbursement for two round trips to and from Bayhill from March 5, 2014, through the 2014-2015 school year at the I.R.S. rate *or* at a rate commensurate with what West Contra Costa would have to pay transportation providers." OAH Decision 18, ¶ 1 (emphasis added). The ALJ ordered the District to "reimburse [S.B.] for one additional round trip per day of [S.B.]'s attendance at Bayhill from March 6, 2014, through June 3, 2015, inclusive of the 2013-2014 extended school year, at the I.R.S. mileage rate," noting that the District had already reimbursed the family for one round trip for this time period. OAH Decision 19, ¶ 4. While noting that ALJs "have broad latitude to fashion appropriate equitable remedies for the denial of a FAPE," the ALJ denied S.B.'s "alternative request for reimbursement at a rate commensurate with what [the District] would have to pay transportation providers," concluding that S.B. "provided no authority to support such a remedy, and mileage reimbursement is more appropriate here." *Id*. at 18-19, ¶¶ 1-4 (citations omitted). She awarded the family the total sum of $4,972.76. *Id*. at 19, ¶ 5.

The ALJ found in the District's favor as to the family's request for IEEs. The ALJ found that the District "acted timely in responding to the March 5, 2014 request for independent

8

evaluations" and provided all required information to the family. OAH Decision 17, ¶¶ 33, 34. Noting that she gave "more weight . . . to the consistent, supported testimony of [the District's witnesses] than to the inconsistent, limited recollections of [M.B.] and [S.B.'s] [s]ister," the ALJ concluded that the "March 27, 2014 letter granting [S.B.]'s independent evaluation request was correctly addressed and properly mailed and is therefore presumed to have been received." *Id*. at 17, ¶ 34 (citing Cal. Evid. Code § 641). The ALJ found that S.B. had not rebutted that presumption. *Id*. While noting that the District "was required to ensure that the independent evaluations were provided," the ALJ concluded that "in this case, it reasonably appeared that [S.B.] abandoned her request for independent evaluations." *Id*. at 17, ¶ 36. The ALJ discussed the fact that S.B., M.B., and the family's lawyer never attempted "to follow up on the independent evaluations after the initial request." *Id*.

The ALJ addressed S.B.'s argument that "even if [M.B.] received the letter granting the independent evaluations, she could not understand it as it was not in her native language." The ALJ rejected this argument, and wrote that S.B., "who was over 18 years old, sharing her educational rights with [M.B.], and living with [M.B.], is an English speaker." *Id*. The ALJ concluded that the District's legal obligations as to the evaluations "were properly discharged because [S.B.] abandoned the independent evaluations. Accordingly, [S.B.] failed to meet her burden of establishing that [the District] denied her a FAPE by failing to provide the independent evaluations." *Id*. at 18, ¶ 37.

Finally, the ALJ also rejected as "incorrect" the District's argument that "its legal obligation ended once the letter approving the independent evaluations was sent." *Id*. at 18 ¶ 37. She wrote that "[d]istricts, not students, have a legal duty to 'ensure' that independent evaluations are provided," and that "if there had been *any* indication that [S.B.] was not abandoning, or still wanted, the independent evaluations, [the District] would have been obligated to take additional, affirmative action to ensure the evaluations were provided." *Id*. (emphasis in original). However, the ALJ concluded that the District's "legal duties were properly discharged because [S.B.] abandoned the independent evaluations." *Id*.

### C. Civil Proceedings

Plaintiffs filed the present action on August 3, 2016.  They filed an amended complaint on August 8, 2017, seeking to reverse portions of the May 15, 2016 OAH decision.  [Docket No. 45 (Am. Compl.)]  They allege three claims: 1) that the ALJ erred in awarding Plaintiffs mileage reimbursement for two round trips per day rather than the amount the District would have paid to transport S.B. to and from school; 2) that the ALJ erred in finding that Plaintiffs did not establish that S.B. was denied a FAPE based on the District's failure to provide IEEs; and 3) that the District's failure to file an answer to the October 23, 2015 amended due process complaint violated the IDEA.

The parties each subsequently moved to introduce additional evidence to supplement the administrative record.  On November 17, 2017, the court denied Plaintiffs' motion and granted the District's motion.  [Docket No. 60.]

## II.    STANDARD OF REVIEW

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs."  *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992).  Congress enacted the IDEA "to assist state and local agencies financially in educating students with disabilities."  *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634, 642 (9th Cir. 2005).  Congress stated the goal of the IDEA as follows:

> to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]

20 U.S.C. § 1400(d)(1)(A).  To that end, the IDEA contains numerous procedural safeguards, including parental notification requirements and complaint procedures "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. §§ 1415(b)(3), 1415(b)(6)(A).  After filing a complaint, a child's parents are entitled to "an impartial due process hearing."  20 U.S.C. § 1415(f)(1)(A).  "In California, the hearing is 'conducted by a person knowledgeable in the laws governing special education and administrative hearings[.]'"  *Ojai Unified Sch. Dist. v. Jackson*, 4

F.3d 1467, 1469 (9th Cir. 1993) (citing Cal. Educ. Code § 56505(c)). Any party may appeal the result in a civil action in state or federal court. *Id.*

In a civil action seeking review of an administrative decision, the IDEA provides that a court "shall receive the records of the administrative proceedings; . . . shall hear additional evidence at the request of a party; and . . . basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "Thus, judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai*, 4 F.3d at 1471 (citations omitted). However, complete de novo review is inappropriate. "Because Congress intended states to have the primary responsibility of formulating each individual child's education, [courts] must defer to their 'specialized knowledge and experience' by giving 'due weight' to the decisions of the states' administrative bodies." *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1126 (9th Cir. 2003), *superseded by statute in non-relevant part*, *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634 (9th Cir. 2005). "How *much* deference to give state educational agencies, however, is a matter for the discretion of the courts[.]" *Ojai*, 4 F.3d at 1472 (emphasis in original) (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)).

## III. DISCUSSION

Plaintiffs' motion for summary judgment is imprecise and difficult to follow. Despite the court's order, the motion still contains factual assertions for which Plaintiffs do not provide citations to evidence. *See, e.g.*, Pls.' Mot. 9, 13. It appears that they move for summary judgment on the ground that the ALJ erred as to two issues: first, they argue that the ALJ erred in awarding them mileage reimbursement for two round trips per day as a remedy for the District's failure to provide transportation for S.B. Second, they argue that the ALJ erred in finding that S.B. failed to meet her burden of establishing that the District denied her a FAPE by failing to provide the IEEs and finding that S.B. abandoned her request for IEEs. They also appear to seek summary judgment on their claim for relief based upon the District's failure to file an answer to the October 23, 2015 amended due process complaint, although they do not specify any remedy they are

11

seeking in connection with this claim.

The District cross-moves for summary judgment, arguing that the ALJ's decision on the mileage reimbursement and IEEs was fully supported and free of error. They also argue that Plaintiffs waived their claim regarding the District's alleged failure to file an answer to the amended due process complaint, and that Plaintiffs were not prejudiced by any such failure.

## A. The ALJ's Award of Reimbursement for Two Round Trips per Day

As discussed, the ALJ concluded that the District had denied S.B. a FAPE from March 5, 2014 through the end of the 2014-2015 school year by failing to provide S.B. compensation and by offering to reimburse the family for mileage "for only one round trip per day, instead of two." OAH Decision 16, ¶¶ 28-30. The ALJ considered the family's request for either mileage reimbursement for two round trips per day during the relevant time period, or reimbursement for the amount the District would have paid transportation providers to transport S.B. The ALJ concluded that mileage reimbursement for two round trips per day was "more appropriate" and awarded the family the corresponding amount. There appears to be no dispute that the District has paid Plaintiffs the full amount awarded by the ALJ, which is $4,972.76. *See* Defs.' Mot. 4.

Plaintiffs argue that the ALJ erred in awarding them mileage reimbursement for two round trips per day instead of awarding them the actual cost of transporting S.B. that the District would have incurred had it provided transportation for S.B. According to Plaintiffs, the ALJ had broad authority to award Plaintiffs the actual costs of transportation, and note that IDEA remedies "primarily consist of reimbursement." Pls.' Mot. 14 (citing *Draper v. Atlanta Indep. Sch. Syst.*, 518 F.3d 1275, 1285 (11th Cir. 2008) (holding that "an award of reimbursement for the expenses of a private school is allowed under the Act."). Plaintiffs argue that had they been able to afford to pay for the costs of private transportation for S.B., the IDEA would "clearly" authorize reimbursement by the District to Plaintiffs for those expenses. *Id*. at 15. They assert that by having to reimburse Plaintiffs only for mileage for two round trips per day, the District "realized a savings" of over $100 per day, compared to what they would have paid a third party transportation provider. *Id*. According to Plaintiffs, the District has been unjustly enriched because Plaintiffs provided transportation for S.B. that it was legally required to provide. *Id*. at 16-17.

The problem with Plaintiffs' argument is that the ALJ awarded them a remedy *that they specifically requested*. As discussed above, Plaintiffs' October 23, 2015 amended due process request proposed a resolution of the transportation dispute through "reimburse[ment] . . . for two round trip mileage to/from Bayhill High School at the IRS rate from May 5, 2014 through the 2014-2015 school year." A.R. 148. They repeated this request in their January 5, 2015 amended prehearing conference statement. A.R. 95. In both filings, Plaintiffs also requested an award of the actual cost of transporting S.B., had the District hired a third party transportation provider to transport S.B., but they framed this request as an alternative: "Parents are requesting either two round trips for the 2014-15 school year or reimbursement at the rate that the District pays its transportation company for two rounds trips between San Pablo and Oakland." A.R. 147. *See also* A.R. 95 ("District shall reimburse Parents for two round trip mileage to/from Bayhill High School at the IRS rate from May 5, 2014 through the 2014-15 school year or provide a rate commensurate with the District's transportation provider for the two round trips."). Following the hearing, Plaintiffs briefed their entitlement to an award of the actual amount the District would have paid to a third party for transporting S.B., but again framed this as an alternative request: "Student and/or Parents are entitled to mileage reimbursement at the IRS rate through March 5, 2014 and beginning March 6, 2014 through the end of the 2014-15 school year, Student and/or Parent[s] are entitled to reimbursement based on the rates paid for private transportation providers or two round-trips per day." A.R. 131-133.

In their opposition to the District's motion, Plaintiffs admit that they requested mileage reimbursement as an "alternate remed[y]." Pls.' Opp'n 5. They explain that "the purpose of requesting alternate remedies was to protect Plaintiffs in the event one of the requested remedies was not available." *Id.* That is precisely what happened here: the ALJ evaluated the two alternatives, concluded that mileage reimbursement was "more appropriate," and awarded Plaintiffs that remedy. Plaintiffs offer no authority to support their claim that the ALJ erred by awarding them one of two possible remedies that they themselves requested.

Moreover, even if it were appropriate to review the ALJ's decision not to award the amount the District would have paid to transport S.B., Plaintiffs have not demonstrated that they

are entitled to such an award pursuant to an unjust enrichment theory.  Plaintiffs concede that the IDEA does not authorize damages, Pls.' Opp'n 7, then go on to argue that "equitable considerations are relevant in fashioning relief" for denial of a FAPE, quoting *School Committee of Town of Burlington, Mass. v. Department of Education of Massachusetts*, 471 U.S. 359, 369, 374 (1985).  In that case, the Supreme Court held that the IDEA authorizes reimbursement for parents' "expenditures on private special education for a child if a court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." *Id*. at 369.  In affirming such an award, the Court noted that 20 U.S.C. § 1415(e)(2)), the IDEA provision that allows a reviewing court to grant "such relief as the court determines is appropriate . . . means that equitable considerations are relevant in fashioning relief." *Id*. at 374.  According to Plaintiffs, equitable considerations mandate an award of the actual cost of transportation by a third party here, because the District was unjustly enriched by refusing to pay for third party transportation and forcing the family to provide transportation despite the hardship it imposed so that S.B. could attend Bayhill.

"Unjust enrichment is not a cause of action . . . or even a remedy, but rather 'a general principle, underlying various legal doctrines and remedies,'" that is "synonymous with restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) (quotation omitted).  "[R]estitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *Id*.  The doctrine of unjust enrichment "applies where plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009).  "The term 'benefit' 'denotes any form of advantage.'  Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense or loss." *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) (citations omitted).  "The defendant in an unjust enrichment claim must pay the amounts necessary to place the plaintiff in as good a position as he or she would have been had no contract been made." *Hernandez*, 180 Cal. App. 4th at 938-39.

14

"Consequently, '[a]n award limited to unjust enrichment is a relatively mechanical and undemanding calculation.'" *Id.*

The concept of unjust enrichment or restitution does not apply in these circumstances. Plaintiffs contend that by transporting S.B. to and from school, they conferred a benefit on the District, since the District was able to keep the money that it would have otherwise paid to a third party transportation provider. But this is not a benefit that Plaintiffs "conferred" on the District for which they are now entitled to restitution, because the costs Plaintiffs incurred in transporting S.B. bear no relationship to the cost that the District would have incurred by using a third party transportation provider. As the District points out, the cost of hypothetical third party transportation is unrelated to Plaintiffs' costs, since rates charged by providers incorporate the company's obligations for payroll, upkeep, overhead, licensing, and insurance costs. *See* Defs.' Mot. 8. Such costs would not be borne by an individual using his or her own vehicle for transportation. Therefore, the third party provider costs that Plaintiffs seek—$140 per day—are disconnected from the goal of placing the Plaintiffs "in as good a position as [they] would have been" had they not transported their daughter themselves. *See Hernandez*, 180 Cal. App. 4th at 938-39. In this case, the ALJ calculated an equitable remedy in the form of mileage reimbursement, a remedy that Plaintiffs themselves requested. The court denies Plaintiffs' motion for summary judgment on this issue and grants Defendants' motion for summary judgment on this issue.

**B. The ALJ's Findings Regarding Plaintiffs' Request for Independent Evaluations**

Plaintiffs next argue that the ALJ erred in finding that the District did not deny S.B. a FAPE by failing to provide the IEEs because S.B. abandoned her request for IEEs.

As discussed above, Plaintiffs' counsel requested three IEEs for S.B. at the March 5, 2014 meeting, in the areas of psycho-education, speech and language, and occupational therapy. OAH Decision at 4, ¶ 9. The ALJ credited the testimony of the District's witnesses that they had mailed a letter to S.B. and her parents on March 27, 2014 communicating the District's approval of the request for IEEs, and found that S.B.'s sister's testimony "that no response to the request [for IEEs] was received . . . was not credible." The ALJ also found that the District did not hear back

from S.B. or her parents regarding the evaluations at any time prior to S.B.'s graduation in June 2015. OAH 7 ¶ 22; 5, ¶ 12. The ALJ concluded that S.B. had not rebutted the presumption that the family had received the March 27, 2014 letter and that the District "properly discharged" their legal obligations as to the IEEs because S.B. "abandoned the independent evaluations" by never following up on her request, even though she was represented by counsel. *Id*. at 17, ¶ 34; 18 ¶ 37.

Plaintiffs do not directly address the credibility finding which supported the ALJ's decision on this issue, and do not challenge the ALJ's finding that S.B. abandoned her request for the IEEs. Instead, they make three arguments in support of their claim that the ALJ erred on this issue. First, they insinuate that the District's witnesses lied about sending the March 27, 2014 letter by suggesting that letter was not created in March of 2014 and is inauthentic. Next, they argue that even if Plaintiffs received the March 27, 2014 letter, the letter was insufficient because it was in English instead of Spanish. Finally, they claim that the ALJ erred in excluding argument and testimony related to a California Department of Education compliance complaint. These arguments are not persuasive.

As to their first argument, Plaintiffs compare the March 27, 2014 letter to a different letter the District sent to Plaintiffs on March 21, 2014, in which the District denied a request for two hours per week of one-to-one educational therapy. *See* A.R. 433-434. According to Plaintiffs, "these two notices are dramatically different," because the March 21, 2014 letter complies with the IDEA's notification requirements while the March 27, 2014 letter does not. Pls.' Mot. 12; *see* 20 U.S.C. § 1415(c)(1) (setting forth requirements for "prior written notice," including "a description of the action proposed or refused by the agency"). They assert that the March 27, 2014 letter "appears to be rushed," does not address the actual request for IEEs, and was never introduced by the District until March 11, 2016. Pls.' Mot. 12. Accordingly, they argue, "S.B.'s attorney questions the authenticity of this document[.]" *Id*.

Plaintiffs do not cite any testimony in support of their claim that the District's witnesses lied about the drafting and mailing of the March 27, 2014 letter. Moreover, there appears to be good reason for the purported "dramatic" differences between the two letters. The March 21, 2014 letter denied Plaintiffs' request for educational therapy and stated that it constituted "prior

16

written notice of the District's refusal of [the] request." A.R. 433. The letter therefore laid out the District's "explanation of why the [District] . . . refuse[d] to take the action" requested, along with "a description of each evaluation procedure, assessment, record, or report the [District] used as a basis for the . . . refused action," a description of the factors relevant to the District's refusal, a statement about S.B.'s parents' rights and procedural safeguards, and sources for the parents to contact for assistance. All of this is required information under the IDEA. *See* 20 U.S.C. § 1415(c)(1)(A)-(F). In contrast, the March 27, 2014 letter provided the District's *approval* of Plaintiffs' "request for an Independent Education Evaluation at public expense[.]" A.R. 436.[2] Since the District was communicating its approval of the request, it follows that it did not need to explain why it "refuse[d] to take the action" and provide information supporting such a decision.

Furthermore, the District's witnesses were consistent in their testimony regarding the generation and mailing of the March 27, 2014 letter. The exhibit containing the March 27, 2014 letter consists of the one-page letter and a six-page attachment along with an email dated March 27, 2014 from Sherry Alford to the District's counsel and Collins, in which she wrote, "The attached will go out today." A.R. 435. Alford, a secretary who reports to Collins, testified about how she prepared the March 27, 2014 letter, asked Collins to sign it, and mailed it via U.S. mail, consistent with the statement in her email. She also testified that the letter was not returned as undeliverable. A.R. 903-04. John Banister, Special Education Administrator, testified that after Plaintiffs' counsel requested the IEEs, he "presented the request to Stephen Collins," and Collins then "sent a letter to the Parents approving the IEE." A.R. 849-50. Banister also testified that he had a copy of the letter. A.R. 851. Collins testified that he had his secretary mail the March 27, 2014 letter to S.B. and her parents, and that the District "generally . . . send[s] IEEs through regular mail." A.R. 952-53.

_____

[2] Although the letter refers to "an Independent Education Evaluation," it appears that the District used the singular term to refer to the evaluations in the three areas requested by Plaintiffs, psycho-educational, speech and language, and occupational therapy. John Banister, Special Education Administrator, testified that Plaintiffs' counsel requested "the IEEs in those three areas" and that Collins "sent a letter to the Parents approving the IEE." A.R. 849-50. Plaintiffs do not cite any evidence supporting their claim that the March 27, 2014 letter communicated the District's approval of only part of Plaintiffs' request and denied the remainder of the request.

1      For her part, S.B.'s sister testified that she could not remember if she had seen the March

2  27, 2014 letter granting the request for IEEs. When asked if the letter "look[ed] familiar," she

3  responded, "No." A.R. 1080. M.B. testified that she could not remember whether she had seen

4  the letter, but also explained that she cannot read English. A.R. 1101, 1102 (testimony regarding

5  Ex. D13). She also testified that she does not "have problems with receiving mail at [her] home."

6  A.R. 1088.

7      The ALJ discussed the witnesses' testimony at length in the decision. She wrote that

8  S.B.'s sister's testimony "was at times inconsistent and demonstrated that she had difficulty

9  remembering details about past events and correspondence." The ALJ also found that M.B.'s

10  "ability generally to recollect past events, dates, and communications was impaired." OAH

11  Decision 7-8, ¶¶ 22, 23. The ALJ found that the testimony of Alford, Banister, and Collins "was

12  consistent and supported by documentation and thus given more weight" than S.B.'s testimony

13  about the March 27, 2014 letter. OAH Decision 7, ¶¶ 21, 22. Having reviewed the transcript and

14  the ALJ's decision, the court finds that there is no support for Plaintiffs' argument that the March

15  27, 2014 letter is not "authentic."

16      Next, Plaintiffs argue that even if they received the March 27, 2014 letter, it was

17  insufficient because it was written in English rather than Spanish. According to Plaintiffs, as the

18  ALJ acknowledged, S.B. shared her educational rights with her mother, M.B. *See* OAH Decision

19  11, ¶ 6. Plaintiffs argue that M.B. "cannot be considered to have been 'notified' that the IEE had

20  been granted" since M.B. could not read the letter. Pls.' Mot. 13. As noted, the ALJ addressed

21  this argument in the decision, and wrote that S.B. lived with M.B., was over 18 years old at the

22  time the letter was mailed, and "is an English speaker." OAH Decision 17, ¶ 36; *see also id*. at 3,

23  ¶ 1 (S.B. "is bilingual and speaks both Spanish and English."). The ALJ wrote that S.B.

24  "provide[d] no authority to show that under these circumstances the notice . . . was insufficient."

25  OAH Decision 17, ¶ 36. Plaintiffs argue that there is "no evidence anywhere in the record" to

26  support the finding S.B. is a "Fluent English" speaker. Pls.' Mot. 13. Not so. Although the

27  record contains evidence that S.B. struggled to express herself in English, A.R. 166, she received

28  instruction at Bayhill in English; received passing grades in English, including an A- in English

12; and had "intermediate" English-language development test scores. *See* A.R. 166-67, 188, 270. Further, her November 1, 2013 IEP noted that S.B. "is a bilingual speaker (Spanish and English with Spanish being her primary language)." A.R. 167. Plaintiffs cite no evidence in support of their suggestion that S.B. could not read and comprehend the March 27, 2014 letter because it was in English.[3]

Finally, Plaintiffs make a convoluted argument that the ALJ erred in excluding argument and testimony related to a California Department of Education ("CDE") compliance complaint. On November 4, 2015, Plaintiffs filed a compliance complaint with the CDE in which they alleged that the District had failed to provide them with a translated copy of S.B.'s IEP. Pls.' Mot. 13-14. The CDE issued an investigation report in January 2016 in which it found in the District's favor. A.R. 500-02. Plaintiffs appear to argue that one of the findings in the report undermines the District's credibility about when it first became aware that M.B. had requested a translated copy of the IEP. Plaintiffs challenge the ALJ's refusal to permit their attorney to cross-examine the District's witnesses on the CDE report. *See* Pls.' Mot. 13-14. Plaintiffs do not explain the relevance of the CDE report, do not explain how it undermines the District's credibility, and do not tie the report to any individual's testimony at the hearing.

In sum, the ALJ did not err by 1) crediting the District's witnesses' testimony that the District timely mailed a letter to S.B. and her parents communicating the District's approval of the request for IEEs; 2) finding that Plaintiffs were presumed to have received the letter; and 3) concluding that S.B. abandoned her request for IEEs, which discharged the District's legal duty to provide the evaluations. *See* OAH Decision 17-18, ¶¶ 34, 36, 37. The ALJ's credibility findings were thorough and supported by the record and the court finds no error. Accordingly, Plaintiffs' motion for summary judgment on this issue is denied. Defendants' motion for summary judgment on this issue is granted.[4]

---

[3] The court also notes that Plaintiffs were represented by counsel at the time.

[4] Since the court concludes that the ALJ did not err with respect to the IEEs issue, it does not reach Defendants' alternative argument that this claim is barred by the doctrine of laches.

### C. The District's Failure to File a Response to the Due Process Complaint

Finally, Plaintiffs move for summary judgment on their claim that the District violated the IDEA by failing to file an answer to the October 23, 2015 amended due process complaint.

20 U.S.C. § 1415 sets forth requirements for responding to a parent's due process complaint under the IDEA. It provides:

> If the local educational agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, such local educational agency shall, within 10 days of receiving the complaint, send to the parent a response that shall include—
>
> **(aa)** an explanation of why the agency proposed or refused to take the action raised in the complaint;
>
> **(bb)** a description of other options that the IEP Team considered and the reasons why those options were rejected;
>
> **(cc)** a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
>
> **(dd)** a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(2)(B)(i)(1).

In *M.C. v. Antelope Valley Union High School District*, 858 F.3d 1189, 1199 (9th Cir. 2017), the Ninth Circuit held that a school district's failure to respond to a due process complaint as required by section 1415(c)(2)(B) may not be a denial of a FAPE but may violate "the IDEA and due process." The court explained that "[l]ike an answer to a complaint, a response [to a due process complaint] serves an important dual purpose: [i]t gives notice of the issues in dispute and binds the answering party to a position." *Id.* The court continued:

> Failure to file a response puts the opposing party at a serious disadvantage in preparing for the hearing, as it must guess what defenses the opposing party will raise. The problem is particularly severe in IDEA cases because there is no discovery.

*Id.* The court further held that when a school district fails to file a timely response, an ALJ must not go forward with a hearing but must instead order the school district to respond, sua sponte if necessary, "and shift the cost of the delay to the school district, regardless of who is ultimately the prevailing party." *Id.* at 1199-1200, 1200 n.6.

Plaintiffs argue that the District never filed an answer to the amended due process

20

complaint, and that because of its failure, they were unaware of the District's position on their mileage reimbursement claim and IEEs claim. Further, they dispute that the District's March 27, 2014 letter complied with prior written notice requirements set forth in section 1415(c)(1).[5] According to Plaintiffs, the District's failure to respond to the amended due process complaint "would have identified the points of disagreement, eliminated surprise and controlled costs." Pls.' Mot. 11.

Defendants argue that Plaintiffs waived the issue by failing to raise it before the ALJ, even though they knew of the District's alleged failure to respond to the due process complaint at the time of the hearing. According to Defendants, by failing to exhaust their administrative remedies regarding this claim, they "stripped this Court of access to any developed record on the issue." Defs.' Mot. 12 (citing *Hoeft*, 967 F.2d at 1303).

The IDEA provides "administrative appeal procedures to be pursued before seeking judicial review." *Hoeft*, 967 F.2d at 1302 (citing 20 U.S.C. § 1415). "The exhaustion doctrine embodies the notion that 'agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer.'" *Hoeft*, 967 F.2d at 1303 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). The Ninth Circuit has described the purpose of the administrative exhaustion requirement for IDEA claims as follows:

> Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

*Id.* at 1303. However, "[t]he IDEA's exhaustion requirement is not absolute, . . . for there are situations in which exhaustion serves no useful purpose," including cases of futility and inadequacy. *Id.* The Ninth Circuit recognizes the following exceptions to the exhaustion requirement: "complaints that: (1) it would be futile to use the due process procedures . . . (2) an

---

[5] Section 1415(b)(3) provides that a local educational agency is required to provide "[w]ritten prior notice to the parents of the child" whenever the agency "(A) proposes to initiate or change; or (B) refuses to initiate or change, . . . the provision of a free appropriate public education to the child." Section 1415(c)(1) sets forth the requirements for the contents of such prior written notice.

agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; [and] (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)." *Id.* at 1303-04 (citation omitted, emphasis removed).

The court concludes that Plaintiffs waived the issue of the District's failure to file a response to the amended due process complaint. Over four months elapsed between the filing of the amended due process complaint in October 2015 and the March 2016 hearing before the ALJ. Given this timeframe, Plaintiffs were certainly aware that the District had failed to respond to the amended due process complaint but did not raise it in their opening or closing briefs or at the hearing before the ALJ. Moreover, Plaintiffs do not respond to Defendants' waiver argument in any way, and there is nothing in the record to suggest that this claim is subject to any of the exceptions recognized in *Hoeft*, such as futility or inadequacy. Accordingly, Plaintiffs waived the claim. Plaintiffs' motion for summary judgment on this issue is denied. Defendants' motion for summary judgment on this issue is granted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied. Defendants' motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: August 23, 2018



Donna M. Ryu
United States Magistrate Judge